UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Keana Taylor<br>    Plaintiff,<br><br>v.<br><br>Texter from 406-204-1041 AKA Get Relief RX LLC AKA Bruce Smith AKA Charles Chambless AKA Aubrey Prince,<br>    Defendant. | **Civil Action No. 4:25-cv-4901**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATIONS OF
THE TELEPHONE CONSUMER PROTECTION ACT**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Keana Taylor ("Plaintiff") files this Complaint for, *inter alia,* violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 (the "TCPA") and provisions of the Texas Business and Commercial Code relating to telemarketing abuse, including TBCC §302.101 (the "TBCC"), against the Partnerships, Individuals, and Unincorporated Associations identified in the contemporaneously filed *Affidavit of Keana T. Taylor In Support Of Her Complaint* (collectively the "Defendants"), and would respectfully show the Court as follows:

**PARTIES**

**Plaintiff**

1.    Keana Taylor ("Plaintiff") is a natural person residing in Houston, Texas, within this judicial district.

2.    Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

3.    Like many other people, Plaintiff receives a multitude of unwanted telemarketing solicitations in the form of phone calls and text messages. This Complaint is based on the phone

1

calls and/or text messages identified in the contemporaneously filed Declaration of Keana T. Taylor In Support Of Her Complaint (the "Taylor Decl.") and all attachments thereto, including but not limited to Schedule A ("Schedule A"). All references to "Exhibits" or "Ex." in this Complaint refer to the Exhibits to the Taylor Decl.

4.      The Taylor Decl., Schedule A and each of the factual allegations detailed therein, are hereby incorporated by reference into this Complaint.

5.      Plaintiff is a residential telephone subscriber. Her telephone number is not associated with a business. Her cellular telephone number has been on the National Do Not Call Registry since June 28, 2006, Ex. 1. Plaintiff's telephone number is also on the Texas Do Not Call list. Ex. 2 and Ex. 3.

## Defendants

6.      Upon information and belief, each of the telemarketing communications identified in Schedule A was initiated by a partnership, individual, or unincorporated association. Each of those partnerships, individuals, or unincorporated associations are hereby named as a Defendant to the claims in this Complaint (collectively, the "Defendants"). Defendants are "persons" as that term is defined by 47 U.S.C. § 153(39). All communications from the same number(s) are believed to be from the same Defendant.  Thus, for example, the two text messages received from telephone number 406-204-1041 are believed to all originate from the same Defendant; rather than from two Defendants.

7.      Thus, Defendant specifically includes at least the entity and each of Bruce Smith, Charles Chambless, and Aubrey Prince, each of whom are individually liable for the texts sent from the telephone number 406-204-1041 according to the TCPA.

8.      For certain Defendants listed on Schedule A, if entities, partnerships, individuals, or unincorporated associations are listed in association with said Defendant ("Additional Persons"), those Additional Persons are, on information and belief, "officer(s), agent(s), or other person(s) acting for or employed by" said Defendant. And, on information and belief, those Additional Persons are responsible for actions or omissions in furtherance of the unsolicited telemarketing communications complained of herein, and did so within the scope of their employment or agency relationship with Defendants.  Thus, any Additional Persons so listed are Defendants in their own right and are included in the definition of Defendants to this Complaint. See 47 U.S.C. §217, see also Spurlark v. Dimension Service Corporation et al, 2022 WL 2528098 (S.D. Ohio 2022).

9.      Because the Defendants are engaging in illegal telephone solicitation and telemarketing practices, they desire to avoid responsibility and liability for their actions, and engage in practices such as using false names or otherwise fraudulently identifying themselves, "spoofing" or otherwise obfuscating telephone Caller ID information, lying about their employers or other relationships, and other practices intended to obfuscate their true legal identities and those of other responsible parties.

10.      The information provided in Schedule A is true and accurate to the best of Plaintiff's knowledge.  Schedule A identifies information relating to one or more telemarketing communication(s) received from the Defendants.

11.      On information and belief, the above named Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, representatives, and/or other persons, who will be identified upon a reasonable opportunity for

3

discovery and, pursuant to 47 U.S.C. §217, any such officer(s), agent(s), or other persons so identified in the future are also Defendants.

## JURISDICTION & VENUE

12.    This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. In Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012), the United States Supreme Court confirmed that federal district courts have subject matter jurisdiction to hear private civil suits under the TCPA.

13.    This Court has supplemental subject-matter jurisdiction pursuant to 28 U.S.C. § 1367 over the TBCC and/or other state claims asserted herein, because they arise from the same set of facts as the TCPA claims, specifically the unsolicited and unlawful telemarketing communications listed in Schedule A.

14.    This Court may properly exercise personal jurisdiction over each of the Defendants on the claims asserted herein, because each Defendant purposefully and directly targets business activities towards the Plaintiff, an individual in the state of Texas, and causes harm to Plaintiff within this judicial district.

15.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this suit occurred in this Judicial District.

## DEFENDANTS' UNLAWFUL CONDUCT

16.    On information and belief, Plaintiff has received more than one telephone call (including text messages) within a 12-month period, by or on behalf of each of the Defendants, in violation of the regulations prescribed under 47 U.S.C. § 227 and regulations promulgated thereunder, by each of the Defendants identified in Schedule A.

4

17.      Each communication identified in Schedule A identifies at least one unsolicited call placed, or text message sent by a Defendant, to Plaintiff on her personal cellular telephone ending in 6404. Each of those calls or text messages was purposefully directed to the Plaintiff in an effort to sell goods or services to the Plaintiff, such as medications or health coaching services. Schedule A.

18.      Where Schedule A, on their faces, identify two communications from the same number or entity, those communications constitute "more than one telephone call" as required by 47 U.S.C. §227(c)(5).

19.      On information and belief, Plaintiff has no established business relationship with any of the Defendants and has never sought information on goods or services from them. Plaintiff never provided her telephone number to any of the Defendants identified in her Complaint, and never consented to receive the texts.

20.      In at least two text messages sent by Defendants, Plaintiff received unsolicited promotional content, including an image advertisement and a follow-up message from "Kristine" of GetReliefRX. The second message was a lengthy, preformatted solicitation containing the Plaintiff's first name and a link to a commercial website, and it prompted Plaintiff to reply with a specific keyword ("YES") to receive further information. The message also included automated opt-out language ("Stop 2End"). These characteristics – including the use of templated language, embedded hyperlinks, uniform formatting, and keyword response prompts – indicate that the messages were sent using an ATDS or other automated texting platform.

21.      These texts were not made for "emergency purposes," but rather for telemarketing purposes.

KEANA TAYLOR V. TEXTER FROM 406-204-1041
CIVIL ACTION NO. 4:25-CV-4901

22.     Upon information and belief, each of the text messages that Plaintiff received were sent using an ATDS used to send massive numbers of unsolicited text messages to residential and/or cell phone owners. On information and belief, Defendants' auto dialers store lists of telephone numbers to be texted and uses a random or sequential number generator to determine the dialing or texting order of the calls. On information and belief, these lists of numbers stored are acquired or purchased from a third party selling "leads" – a/k/a numbers gathered or scraped from public sources such as property recording offices. On information and belief, Defendants' auto dialers store the "leads" into a database, and generate either random or sequential numbers to indicate the calling order for the leads. Sequential numbers would be used to dial the numbers for the "leads" in the order they are stored in the database, or in another order determined by the specific programming of the auto dialer system. Random numbers would be used to dial the numbers for the "leads" in a shuffled dialing order. The system can then dial the phone numbers that were stored in the database using either the random or sequential number generated. On information and belief, when Defendants gather additional information about Plaintiff – for example that she received or responded to a text message, this information is noted on her file within the ATDS. Plaintiff is presently unaware of the precise technical details of Defendants' various auto dialer systems, however upon a reasonable opportunity for discovery expects to be able to discover the same. See Scherrer v. FTP Operating Co., LLC, 2023 WL 4660089 (D. Colo. July 20, 2023).

23.     The phone calls and text messages that Plaintiff received from one or more of the Defendants contained solicitations that Plaintiff neither requested nor consented to receive, including offers of unspecified Medicare or Medicaid services, as well as solicitations for the purchase of other products and/or services.

24.     It is common knowledge – and Plaintiff's experience – that makers of unsolicited telemarketing calls or text messages, including those listed in Schedule A, commonly attempt to obfuscate the true nature or purpose of the contact. For example, Plaintiff received two texts from Defendants, including one containing an image advertisement stating "GETRELIEFRX… REPLY YES!" and a follow-up message asking Plaintiff to text back "YES" to learn more about affordable GLP-1 medications. These messages presented themselves as informational while ultimately soliciting Plaintiff to purchase goods and services and prompted her to take action by responding to the message. Such practices are indicative of the deceptive methods commonly employed by telemarketers to conceal the commercial nature of their solicitations.

25. In essence, the Defendants making such text messages are acting like service providers who solicit payment in exchange for facilitating access to goods and services. To obtain these services, Plaintiff would be prompted to respond to the Defendants' communications and engage with their program. If Plaintiff were to respond positively, Defendants would perform services such as providing information about GLP-1 medications and offering personalized health coach. If Plaintiff were to allow Defendants to perform these services, Plaintiff would pay for the services (whether Plaintiff knew it or not) through the Defendants' pricing or program fees. See, e.g. Pepper v. GVG Capital LLC d/b/a WeBuy-Homes-4Cash.org, Civ. Action No. 4:22-cv-2912-LHR (S.D.TX. June 9, 2023).

26.     The Defendants, desirous of avoiding detection and liability for their illegal and unsolicited telemarketing, engage in practices designed to obfuscate their identities, those of their employees, and confuse the recipient about the true nature of the call. In doing so, Defendants violate provisions of the Telemarketing Sales Rule, as amended in 2015. See https://www.ftc.gov/business-guidance/resources/complying-telemarketing-sales-rule.

27.    On information and belief, each and every phone company used by the Defendants has available Caller ID services with the capacity to transmit both an actual phone number of the Defendant, and the name of the telemarketer. Further, on information and belief, Defendants have not taken "all available steps to ensure transmission of Caller ID information in every call." This is because, Defendants do not want call recipients such as Plaintiff to know who they are, or Plaintiff would ignore or block the calls.

28.    On information and belief, Defendants' telephone agents use fictitious names in their communications, but do not keep employee records sufficient to trace each fictitious name to specific employees.

29.    The actions described herein were in violation of the TCPA and the Texas Business and Commercial Code.

## COUNT I
## DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(B)

30.    Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

31.    The TCPA prohibits sending text messages or placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or message is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

32.    Defendants each initiated one or more texts to Plaintiff's cellular telephone number using an automatic telephone dialing system.

33.    Defendants' texts were not made for "emergency purposes."

34.    Defendants' texts to Plaintiff's cellular telephone were made without any prior express consent.

35.     Plaintiff never sought information, products, or services pertaining to the communications listed in Schedule A; *e.g.*, offers related to health services, medications, or other unsolicited solicitations.

36.     Plaintiff never provided her telephone number to any of the Defendants and never consented to receive the calls or texts.

37.     Defendants each contacted Plaintiff, despite the fact that Plaintiff has been on the National Do Not Call Registry since June 28, 2006 and the Texas Do Not Call List since at least 2022.

38.     Defendants' acts as described above each were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

39.     The acts and/or omissions of each of the Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

40.     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual, and treble damages.

## COUNT II
## DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(C)

41.     Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

42.     The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or his telephone number on the National

9

Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

43.     Defendants each contacted Plaintiff more than once, despite the fact that Plaintiff has been on the Do Not Call Registry since June 28, 2006.

44.     Defendants' acts as described above each were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

45.     The acts and/or omissions of each Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

46.     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

**COUNT III**
**DEFENDANTS VIOLATED § 302.101 OF**
**THE TEXAS BUSINESS AND COMMERCIAL CODE**

47.     Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

48.     Those Defendants who made texts to Plaintiff, specifically including those Defendants whose texts appear in Schedule A are listed as a "Text" (the "TBCC Defendants"), each violated § 302.101 of the Texas Business & Commercial Code when its representatives engaged in continuous and repetitive telephone solicitation of Plaintiff without obtaining a registration certificate from the Office of the Secretary of State. §302.302(a) of the Texas Business

10

& Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation.

49.    §302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

50.    Furthermore, §302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees.

**COUNT IV**
**DEFENDANT'S UNSOLICITED TEXT MESSAGES**
**CONSTITUTE A NUISANCE**

51.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

52.    Defendants' unrestricted and unsolicited text messages constitute a nuisance as to Plaintiff as that cause of action is interpreted by the Fifth Circuit Court of Appeals in Cranor v. 5 Star Nutrition, LLC, 998 F.3d 686 (2021).

53.    Defendants' unsolicited text messages interfered with Plaintiff's use of her cell phone and trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone.

54.    Defendants' unsolicited text messages consumed Plaintiff's cell phone battery life, consumed minutes and text message allocated to Plaintiff by her cell phone provider, and takes up storage space in her phone's memory.

55.     Defendants' multiple unsolicited, aggravating, and annoying text messages trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone.

56.     With respect to those Defendants who have previously been sued by Plaintiff for violations analogous to those described herein, their continued violation of the statutes recited herein, even after Plaintiff's prior suits against them evidence their wanton and reckless disregard for the harms caused and violations of the law.

## COUNT V
## DEFENDANT'S UNSOLICITED TEXT MESSAGES
## CONSTITUTE AN INVASION OF PLAINTIFF'S PRIVACY

57.     Defendants' multiple unrestricted and unsolicited calls and text messages constitute an invasion of Plaintiff's privacy as that cause of action is interpreted by the Fifth Circuit Court of Appeals in Cranor v. 5 Star Nutrition, LLC, 998 F.3d 686 (2021).

58.     Each of Defendants' multiple unlawful text messages and/or telephone calls sent to constitutes an invasion of Plaintiff's privacy.

59.     Defendant's aggravating and annoying text messages trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line and intruded upon Plaintiff's seclusion.

60.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd 559 ¶ 7 (Jan. 4, 2008). Defendant's text message calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using a portion of the service period allocated to Plaintiff by her cellular telephone service provider. See Cranor v. 5 Star Nutrition, LLC, 998 F.3d 686 (5th Cir. 2021).

61.     Upon information and belief, each Defendant has a corporate policy of sending text messages using an ATDS in order to market and/or advertise Defendant's services to individuals such as Plaintiff without first gaining express written consent to send such messages.

62.     The text messages make Plaintiff feel uncomfortable and targeted in a very personal and intrusive way.

63.     The text messages are inappropriate and are the very type of injury that the TCPA sought to prevent.

## **PRAYER FOR RELIEF**

For the reasons set forth above, Plaintiff prays that she have judgment against each Defendant to include at least the following:

a)     All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A)) and §302.302 of the Texas Business and Commerce Code;

b)     Statutory damages of $500.00 per violative telephone call or text (as provided under 47 U.S.C. § 227(b)(3)(B));

c)     Additional statutory damages of $500.00 per violative telephone call or text (as provided under 47 U.S.C. § 227(c);

d)     Treble damages of $1,500.00 per violative telephone call or text (as provided under 47 U.S.C. § 227(b)(3));

e)     Treble damages of $1,500.00 per violative telephone call or text (as provided under 47 U.S.C. § 227(c);

f)     Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c);

g)     Statutory damages of $5,000 per violation (as provided under §302.302(a) of the Texas Business & Commerce Code);

h)     As for the TBCC Defendants, all reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to §302.302(a) of the Texas Business & Commerce Code;

i)     As to all Defendants, attorney's fees and costs;

13

j)      Pre-judgment interest at a rate of 10%, or the maximum rate allowed by law or this Court; and post-judgment interest at the maximum rate allowed by this Court as described at: https://www.txs.uscourts.gov/page/post-judgment-interest-rates, presently 5.34%;

k)      All other relief which Plaintiff may show to be justly entitled or to which this Honorable Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

October 14, 2025                                 Respectfully Submitted,

                                                 *Keana T. Taylor*
                                                 Keana T. Taylor
                                                 Texas State Bar No: 24042013
                                                 keana@taylordykema.com
                                                 Direct Personal Cell: 713-299-6404

                                                 Erik Dykema
                                                 New Jersey State Bar No: 021652010
                                                 erik@taylordykema.com
                                                 Direct Personal Cell: 917-670-9843

                                                 **Taylor Dykema PLLC**
                                                 914 E. 25th St.
                                                 Houston, Texas 77009

## CERTIFICATE OF SERVICE

I hereby certify that today, October 14, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

                                                 *Keana T. Taylor*
                                                 Keana T. Taylor

14